UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

XIANWU LIN,

    **Plaintiff,**

    v.

CUBE KARAOKE LLC, et al.,

    **Defendants.**

Case No. 2:14-cv-2647
JUDGE GREGORY L. FROST
Magistrate Judge Terence P. Kemp

**OPINION AND ORDER**

This matter is before the Court for consideration of Defendants' motion for judgment on the pleadings (ECF No. 18), Plaintiff's response in opposition (ECF No. 20), and Defendants' reply memorandum (ECF No. 23). For the reasons that follow, the Court **DENIES** the motion.

**I.    BACKGROUND**

The facts set forth below are taken from Plaintiff's complaint and are assumed true for purposes of this Opinion and Order. In 2010, Plaintiff (who hails from China) was enrolled as an international student studying business at Miami University in Oxford, Ohio. Prior to his graduation in 2013, Plaintiff learned that an American student at Miami was looking for investors in a karaoke business. That student was Defendant Maxwell Warren.

Plaintiff met with Warren to discuss a potential investment. During the meeting, Warren provided Plaintiff was a business plan and financial projections for CUBE Karaoke Lounge and Bistro ("CUBE"). (ECF Nos. 1-1 & 1-2.) The business plan states that CUBE is located in Oxford, Ohio, and "appeals centrally to the International Asian Community of Miami University." (ECF No. 1-1, at PAGEID # 23.) The business plan does not reference CUBE locations outside of Oxford, Ohio.

Warren offered Plaintiff the opportunity to invest a minimum of $50,000 in CUBE. Plaintiff was interested in investing in "CUBE Columbus." Presumably, "CUBE Columbus" refers to a different CUBE location than the CUBE location in Oxford, Ohio, although Plaintiff does not specify or explain this fact in his complaint. It is unclear from the complaint if "CUBE Oxford" existed and/or if Plaintiff was interested in investing in that location at any point.

After Plaintiff committed to invest, Warren informed Plaintiff that CUBE Columbus was "nearly full." Warren instead proposed that Plaintiff invest $50,000 for a 5% stake in CUBE Cincinnati. According to Plaintiff, "Warren did not revise his offering claims in connection with this change, update the Prospectus, or amend his projected-return figures. Nor did he tell [Plaintiff] that CUBE Cincinnati did not exist yet as a company, and had no real plan for operations." (ECF No. 1 ¶ 21.) Plaintiff nevertheless "signed the CUBE Cincinnati operating agreement on May 29, 2014" and wired $50,000 to Warren. (*Id.* ¶ 22.) Plaintiff alleges that he signed the operating agreement "[i]n reliance on Warren's prospectus materials and ongoing solicitations." (*Id.* ¶ 22.)

Problems began to arise as soon as Plaintiff made his investment. Plaintiff alleges that, after he wired $50,000 to CUBE Karaoke, only $45,000 was transferred to CUBE Cincinnati. Warren allegedly spent the additional $5,000 on an apartment for himself. Warren allegedly misappropriated funds from Plaintiff and other investors and applied those funds towards his personal expenses (including restaurants, bars, liquor stores, and a vacation, among other things). Plaintiff alleges that Warren spent an additional $2,423.57 of Plaintiff's investment on personal expenses. In October of 2014, Plaintiff learned that one of the biggest investors in CUBE Columbus had demanded rescission of his investment, presumably because of Warren's misappropriation.

Approximately two weeks later, Warren sent Plaintiff a "Stock Purchase Agreement" (the "SPA") by which Plaintiff would exchange his interest in CUBE Cincinnati for an interest in CUBE Columbus.  The SPA stated that Plaintiff would lose $1,000 of value on the transfer.  Plaintiff "sent" questions to Warren; however, Warren did not respond.  (*Id*. ¶ 39.)  Plaintiff nevertheless signed the SPA.

Unbeknownst to Plaintiff, CUBE Columbus had become insolvent.  Warren did not inform Plaintiff of this fact when he signed the SPA.

Plaintiff subsequently learned that a "CUBE Cincinnati insider" was leaving CUBE Cincinnati "because he discovered that Warren was misappropriating company funds."  (*Id*. ¶ 41.)  Plaintiff requested that the insider close the CUBE Cincinnati bank account and return his (Plaintiff's) $50,000 investment.  The insider closed the account, but Warren had the account frozen before Plaintiff received the balance of his investment.  That balance ($42,576.43) remains frozen pending resolution of this dispute.

Plaintiff demanded that Warren unfreeze the account and return the remainder of Plaintiff's investment.  Warren refused.  Plaintiff told Warren that his family needed the money back.  Warren again refused.  Plaintiff alleges that Warren threatened him with legal action and then with physical violence.

Plaintiff filed the complaint that is the subject of this lawsuit on December 17, 2014 against CUBE Karaoke LLC, CUBE Karaoke Cincinnati LLC, CUBE Karaoke Columbus LLC, and Warren.  Plaintiff asserts the following claims for relief:  (1) violations of § 10(b) of the Securities Exchange Act of 1934 (the "Act") and of SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, (2) violations of Ohio's Securities Act, Ohio Revised Code § 1707.44, (3) theft under Ohio Revised

Code § 2307.61, (4) common law fraud, (5) common law breach of fiduciary duty, (6) responsible party liability under § 20 of the Act, and (7) personal liability against Warren.

Defendant now moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) on each of Plaintiff's claims for relief.  Plaintiff opposes the motion.  The Court will address the parties' arguments below.

**II.    ANALYSIS**

A.  Standard of Review

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  The Court reviews motions made under Rule 12(c) in the same manner it would review a motion made under Rule 12(b)(6).  *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6th Cir. 2006).  Accordingly, to survive a motion for judgment on the pleadings, a complaint must provide fair notice of each claim and the grounds upon which it rests.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A court, in ruling on a Rule 12(b)(6) or Rule 12(c) motion, must construe the pleadings in the light most favorable to the plaintiff and treat all well-pleaded allegations contained therein as true.  *See id*. at 555–56.

B.  Securities Fraud Claim Under Rule 10b-5

SEC Rule 10b-5 is codified at 17 C.F.R. § 240.10b-5.  That section states:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

There are five elements to a securities fraud claim under this rule: (1) "a material misrepresentation (or omission)," (2) "scienter, i.e., a wrongful state of mind," (3) "a connection with the purchase or sale of a security," (4) "reliance," (5) "economic loss," and (6) " 'loss causation,' i.e., a causal connection between the material misrepresentation and the loss." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341 (2005).

Here, Plaintiff identifies several specific misrepresentations in the business plan that Warren provided to him. Those alleged misrepresentations include, but are not limited to:

- A statement that CUBE would be governed by a Board of Directors that would create "a system of checks and balances." No such board was ever formed. As a result, Warren maintained full control over CUBE's funds and was able to misappropriate the same for his personal use.

- A statement that officers would be paid a salary of $20,000, and that the Chief Executive Officer (Warren) would be paid a salary of $26,000. Warren "spent substantially more than that on personal expenses." (ECF No. 1 ¶ 53.) Warren allegedly made the statement in the business plan with full knowledge that he would not be taking a $26,000 salary and would instead be spending the investors' money on himself.

- A statement that investors would be paid dividends, when Warren knew or should have known that such payments would never be made.

- A statement suggesting that, at the time Plaintiff made his investment in May of 2014, CUBE was earning $73,981 per month. In fact, CUBE had not yet opened its doors and had not earned any revenue.

Plaintiff also alleges that Warren made certain oral misrepresentations about CUBE and its status. For example, Warren allegedly told Plaintiff that CUBE had secured a liquor license, when in fact that was not the case.

5

Plaintiff alleges that he relied on these statements about CUBE in making the decision to invest in CUBE Cincinnati.  Plaintiff further alleges that his ownership interest transferred entirely to CUBE Columbus, that CUBE Columbus is now insolvent, and that, "[a]s a result of Defendants' misrepresentations and omissions, [Plaintiff] "has suffered the loss of his entire $50,000 investment."  (*Id.* ¶ 61.)

Defendants argue that these allegations do not state a claim for relief.  First, Defendants argue that Plaintiff's reliance on the CUBE Oxford Prospectus was not justified because it did not contain any statements specific to CUBE Cincinnati or CUBE Columbus.  But this argument—although relevant to the issue of reliance—does not warrant judgment at this stage of the litigation.  Plaintiff sufficiently alleged that the statements in the business plan regarding CUBE (the parent company of CUBE Columbus and CUBE Cincinnati) were made in connection with the sale of an equity stake in CUBE Cincinnati, and that he relied on those statements about CUBE Karaoke (and, specifically, the CUBE Oxford location) in deciding to invest in CUBE Cincinnati.  These allegations satisfy the third and fourth elements of a Rule 10b-5 claim at the pleadings stage.

Defendants next argue that Plaintiff's reliance on the financial figures were not justified because it was obvious, based on the fact that earnings were included for future years, that the figures were projections that were not intended to convey past financial performance.  Defendants conclude that Plaintiff's reliance on the historical numbers was unreasonable.  Again, however, the Court cannot draw this conclusion at the pleadings stage of the litigation.  Whether Plaintiff's reliance was unreasonable is a factual issue for the jury.  *Cf. In re Nat'l Century Fin. Enters., Inc. v. Inv. Litig.*, 541 F. Supp. 2d 986, 1004 (S.D. Ohio 2007) ("The issue of whether a

party's reliance was justifiable is largely a question of fact inappropriate for resolution on a motion to dismiss.").

Defendants next offer the related argument that Plaintiff's reliance was unreasonable because he failed to conduct his own due diligence in order to discover the alleged misrepresentations in CUBE's business plan. The Court does not, however, have any evidence before it regarding the diligence Plaintiff did or did not conduct. Defendants' arguments that Plaintiff "had notice of the loss of a large investor" and "presented questions and received no answer," (ECF No. 18, at PAGEID # 160), are themselves insufficient to warrant a finding that Plaintiff's reliance was unjustified as a matter of law. Again, these arguments are relevant to—but not dispositive of—the ultimate issue of reliance.

Defendants next argue that Plaintiff failed to plead actual injury because "[h]e has not pled that his shares or interest have loss [sic] value as a result of reliance on written and oral statements as required by 10b-5." (*Id.*) But Plaintiff alleged that CUBE Columbus (in which he presently owns an equity stake) is insolvent and will never be a viable entity, and that he lost his entire $50,000 investment. Defendants fail to articulate what more Plaintiff was required to plead in this regard. The case Defendants cite does not support their argument on this point.

Next, Defendants argue that Plaintiff's securities fraud claim fails because it "centers on the personal misuse of company funds" rather than misrepresentations and omissions in offering documents. (*Id.*) This argument ignores entirely the statements in the business plan regarding Warren's $26,000 salary. Plaintiff alleges that this statement was made prior to and in connection with his investment. Plaintiff further alleges that this statement was made with full knowledge that Warren had been and would continue to use more than $26,000 of invested funds on personal expenses. Defendants' argument on this point is without merit.

For their final argument regarding Rule 10b-5, Defendants assert that "[t]he complaint reveals family need was another reason for [Plaintiff's] demand for return of his investment." (*Id*. at PAGEID # 161.)  But the fact that Plaintiff made this statement to Warren (and noted the same in his complaint) is irrelevant to the issue of whether Warren engaged in securities fraud. To the extent this statement is relevant to the issue of why Plaintiff is seeking the return of his investment, the Court must accept Plaintiff's allegation at this stage of the litigation that he made the statement about his family's need in order to politely resolve the dispute with Warren, rather than accuse Warren of misappropriation of company funds.

Having rejected each of Defendant's arguments regarding Plaintiff's Rule 10b-5 claim, the Court denies Defendants' request for judgment on that claim.  The Court similarly denies Defendants' corresponding argument that Plaintiff's § 20 responsible party claim cannot survive without the Rule 10b-5 claim.

### C. <u>Fraud, Theft, Breach of Fiduciary Duty, and Piercing the Corporate Veil Claims</u>

Defendants offer the same arguments against the common law fraud claim and the statutory theft claim[1] that they offered against the Rule 10b-5 claim.  Specifically, Defendants argue that Plaintiff's reliance was not justified because the business plan was not directed towards CUBE Cincinnati, because Plaintiff knew that a major investor had pulled out of CUBE Columbus, and because he failed to get his questions answered before transferring his ownership interest to CUBE Columbus. These arguments go to the factual issue of justifiable reliance.  The

---

[1] Defendants argue that Ohio Revised Code § 2913.01 "is a definition and is not a cause of action."  (ECF No. 18, at PAGEID # 163.)  Plaintiff's complaint states that "Defendants' conduct constitutes a 'theft offense' as defined in Ohio Rev. Code An. § 2913.01(K)(3)."  (EF No. 1 ¶ 70.)  Because filings are to be construed by their content and not by their labels, *see, e.g., Coleman v. Ohio State Univ. Med. Ctr.*, No. 2:11-cv-0049, 2011 WL 3273531, at *3 (S.D. Ohio Aug. 1, 2011), any error in labeling the correct section for a statutory theft claim does not warrant judgment on the pleadings.

8

Court cannot conclude at the pleadings stage that Plaintiff's reliance was not justified as a matter of law.

Defendants also argue that Plaintiff pleads that "Warren only spent $7,424.000," which is below Warren's stated salary of $26,000. (*Id*. at PAGEID # 163.) But this argument ignores the litany of allegations throughout the complaint that Warren spent tens of thousands of dollars from invested funds on his own personal expenses. Defendants therefore are not entitled to judgment on either the fraud or the theft claims. Any argument that Plaintiff has not been damaged because $42,000 is currently frozen is premature at this stage of the litigation, given the allegation that Plaintiff lost the entire value of his investment.

In arguing that Plaintiff's breach of fiduciary duty claim should be dismissed, Defendants state that Plaintiff's allegations are vague and conclusory. Defendants further state: "[a]ssuming *arguendo* that he is incorporating his misstatement and misuse of funds allegations, his claims fail for the reasons stated above." (*Id*. at PAGEID # 164.) This argument does not make sense given that Plaintiff explicitly incorporated all preceding allegations into his breach of fiduciary duty allegations. *See* ECF No. 1 ¶ 73. The Court rejects Defendants' argument for the same reasons as stated above.

Defendants' argument for judgment on the claim for piercing the corporate veil is predicated entirely on their argument that Plaintiff's fraud claim fails to state a claim. The Court rejects this argument for the reasons set forth above. The Court therefore rejects all of Defendants' arguments for judgment on the fraud, theft, breach of fiduciary duty, and piercing the corporate veil claims.

### III. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' motion for judgment on the pleadings. (ECF No. 18.)

**IT IS SO ORDERED.**

<u>**/s/ Gregory L. Frost**</u>
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**